STATE EX REL. SCHMEAR, Petitioner, v. GAGNON, Warden, Respondent.

*May 11—June 6, 1967.*

For the petitioner there was a brief and oral argument by *Robert H. Friebert,* public defender.

For the respondent the cause was argued by *William A. Platz,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILKIE, J.    One issue is raised by these proceedings: Is evidence seized pursuant to an arrest based upon a warrant issued by a district attorney inadmissible at trial because the arrest warrant was defective, where the authorization for the arrest warrant was made by the district attorney and trial was held before this court's decision in *State ex rel. White v. Simpson?* [2]

In *State ex rel. White v. Simpson* this court held that a district attorney was not a neutral and detached magistrate as required by *Johnson v. United States* [3] and that therefore he was not empowered to authorize the issuance of an arrest warrant.

In the case at bar the warrant for the arrest of the petitioner was issued by the district attorney and petitioner contends that the arrest is invalid. He contends that if the arrest is invalid, all evidence seized pursuant to that arrest is inadmissible at trial as "a fruit of the poisonous tree." [4] Petitioner's argument continues that if his clothing was seized pursuant to the allegedly defective arrest warrant, the clothing and the testimony of the criminologist as to the blood and semen stains on the clothing should have been excluded. [5]

To begin with, the arrest warrant was issued on November 9, 1963, and petitioner's trial was held in August,

---

[2] (1965), 28 Wis. (2d) 590, 137 N. W. (2d) 391.

[3] *Johnson v. United States* (1948), 333 U. S. 10, 68 Sup. Ct. 367, 92 L. Ed. 436.

[4] *Nardone v. United States* (1939), 308 U. S. 338, 341, 60 Sup. Ct. 266, 84 L. Ed. 307; *Silverthorne Lumber Co. v. United States* (1920), 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319.

[5] *Giordenello v. United States* (1958), 357 U. S. 480, 78 Sup. Ct. 1245, 2 L. Ed. (2d) 1503; *Johnson v. United States, supra,* footnote 3.

1964. The date of the *White* decision, which declared arrest warrants issued by a district attorney invalid, was November 2, 1965. The action of the trial court in admitting the evidence in question was based upon an assumption that the arrest warrant was valid. Thus, the question in the case at bar is whether the *White* rule should be applied retroactively to declare the arrest warrant invalid, thereby rendering evidence seized pursuant to this arrest inadmissible.

The case of *State ex rel. La Follette v. Raskin* [6] resolved the question of the retroactivity of the *White* rule. *State ex rel. La Follette v. Raskin* involved a challenge to the jurisdiction of the court over the defendant, who was arrested pursuant to a warrant issued by a deputy clerk of a county court. In that case this court thoroughly discussed the guidelines for retroactive application of a decision concerning rules of federal constitutional law. This court held that the *White* rule was not to be applied retroactively.

"With respect to the rule in *White,* the basic purpose of the rule is to improve police practices and to assure that arrests will be made on a proper showing of probable cause as determined by an independent and impartial magistrate. This purpose is not served by applying the rule of *White* to cases that have been finalized, even though the defendant has preserved his attack on the validity of the arrest. In each such case the defendant has been arrested, brought before a magistrate, bound over after a finding of probable cause by an impartial magistrate (or waiver) arraigned, tried, convicted, and sentenced. The rule requiring probable cause as determined by an independent magistrate before arrest is aimed not so much at the protection of the innocent or at the preservation of the reliability of the prosecution as against the defendant, but primarily at the requirement of giving a defendant a fair trial." [7]

---

[6] (1966), 30 Wis. (2d) 39, 139 N. W. (2d) 667.

[7] *State ex rel. La Follette v. Raskin, supra,* footnote 6, at page 54.

Retroactivity of a new rule of federal constitutional law is discussed by the United States supreme court in *Johnson v. New Jersey*.[8] That case holds that retroactive application of a constitutional rule is confined to those cases where "the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent.' "[9] Other considerations in *Johnson* were the effect on the administration of criminal laws of a retroactive ruling and the protection of other constitutional rules partially embracing the scope of the new rule. Under these guidelines, the decision of this court in *Raskin,* in refusing to apply the *White* rule retroactively, was entirely correct. An arrest made pursuant to a warrant issued by a district attorney does not affect the integrity or reliability of the fact-finding process.

A further consideration against applying the *White* rule retroactively is that there may be hundreds of prisoners long in prison who have been convicted on evidence seized pursuant to an arrest warrant that did not meet *White* standards but which evidence was essentially reliable.

In a case closely analogous to the instant proceeding, the United States supreme court refused to apply the rule of *Mapp v. Ohio* [10] retroactively.[11] In *Mapp* the supreme court held that all evidence obtained by searches and seizures in violation of the federal constitution is inadmissible in a criminal trial in a state court. The *Mapp* rule was not applied retroactively because the rule affected evidence "the reliability and relevancy of which is not questioned." [12] The court also said that the purpose

[8] (1966), 384 U. S. 719, 725, 726, 86 Sup. Ct. 1772, 16 L. Ed. (2d) 882.

[9] *Johnson v. New Jersey, supra,* footnote 8, at page 727. See *Linkletter v. Walker* (1965), 381 U. S. 618, 639, 85 Sup. Ct. 1731, 14 L. Ed. (2d) 601; *Tehan v. Shott* (1966), 382 U. S. 406, 416, 86 Sup. Ct. 459, 15 L. Ed. (2d) 453.

[10] (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. (2d) 1081.

[11] *Linkletter v. Walker, supra,* footnote 9.

[12] Id. at page 639.

of *Mapp*, which was to deter lawless action of the police, would not be served by retroactive application of the rule, and the rule, which had no bearing on guilt, would seriously disrupt the administration of justice.

In this proceeding, petitioner is contending that the *White* rule should be applied retroactively to exclude evidence seized pursuant to an arrest made by a warrant issued by a district attorney. The reliability or relevancy of the seized evidence is not questioned, and we must conclude that the purpose of *White, i.e.*, to improve police practices, would not be furthered by excluding the evidence in the instant proceeding.

Petitioner contends that the *White* decision was merely an application of already existing federal law, so that *White* did not forge new constitutional concepts. Hence, an arrest made in violation of the standards set forth in *White* violated federal law even if made before *White*, and such an arrest was therefore invalid. Petitioner cites several cases which he claims made the holding in *White* self-evident.[13] However, all these cases stand for the proposition that "the inferences from the facts which lead to the complaint '[must] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' "[14] The issue in *White*, not directly resolved by these rulings, was whether the district attorney was such a neutral and detached magistrate.

The ruling in *White* articulated and defined the concept of a neutral and detached magistrate to exclude a district attorney. No decision of the United States supreme court had expressly held district attorneys to be incompetent to

---

[13] *Henry v. United States* (1959), 361 U. S. 98, 80 Sup. Ct. 168, 4 L. Ed. (2d) 134; *Johnson v. United States, supra,* footnote 3; *Weeks v. United States* (1914), 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652; *Carroll v. United States* (1925), 267 U. S. 132, 45 Sup. Ct. 280, 69 L. Ed. 543; *Giordenello v. United States, supra,* footnote 5; *Aguilar v. Texas* (1964), 378 U. S. 108, 84 Sup. Ct. 1509, 12 L. Ed. (2d) 723.

[14] *Aguilar v. Texas, supra,* footnote 13, at page 112.

issue warrants. In fact, the district attorney was considered to be a servant of the law [15] and a sworn minister of justice.[16] Further, the district attorney was expressly authorized to issue warrants of arrest by sec. 954.02 (3), (5), Stats. Bearing in mind these considerations, the *White* decision was certainly not self-evident.

*By the Court.*—Issuance of writ of *habeas corpus* denied.

[15] *Singer v. United States* (1965), 380 U. S. 24, 37, 85 Sup. Ct. 783, 13 L. Ed. (2d) 630.

[16] *State ex rel. Sauk County District Attorney v. Gollmar* (1966), 32 Wis. (2d) 406, 413, 145 N. W. (2d) 670.